## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ADRIENNE L.,[1]

      Plaintiff,

                        **Case No. 1:21-cv-20492**

   v.                       **Magistrate Judge Norah McCann King**

MARTIN J. O'MALLEY,
Commissioner of Social Security,

      Defendant.


## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Adrienne L. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On July 21, 2019, Plaintiff filed her application for benefits, alleging that she has been disabled since June 30, 2019. R. 110, 122, 202–03. The application was denied initially and upon reconsideration. R. 123–28, 134–36. Plaintiff sought a *de novo* hearing before an administrative

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin J. O'Malley, the Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

law judge ("ALJ"). R. 137–38. ALJ John Campbell held a hearing on October 15, 2020, at which

Plaintiff, who was represented by counsel, testified. R. 45–96. ALJ Karen Shelton held a second

administrative hearing on January 19, 2021, at which Plaintiff, who was again represented by

counsel, testified, as did a vocational expert. R. 675–704. In a decision dated March 5, 2021,

ALJ Shelton concluded that Plaintiff was not disabled within the meaning of the Social Security

Act from June 30, 2019, her alleged disability onset date, through the date of that decision. R.

15–26. That decision became final when the Appeals Council declined review on November 12,

2021. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On

June 13, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF

No. 15.[3] On that same day, the case was reassigned to the undersigned. ECF No. 16. The matter

is ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing
> administrative record and asks whether it contains sufficien[t] evidence to support

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of*

*Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see*

*K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

      Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 30, 2018, her alleged disability onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff's Sjorgren's syndrome, degenerative disc disease, and polymyalgia rheumatica were severe impairments. *Id*.  The ALJ also found that Plaintiff's stage I diastolic dysfunction, history of right shoulder arthroscopy, adhesive capsulitis, mild degenerative changes in the left knee, hypertension, high cholesterol, depressive disorder, and generalized anxiety disorder were not severe impairments. R. 18–19.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 19–26. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a teacher. R. 26. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 30, 2019, her alleged disability onset date, through the date of the decision. R. 26.

Plaintiff disagrees with the ALJ's findings at steps two and four and also challenges the constitutionality of the appointment of the Commissioner of Social Security. *Plaintiff's Memorandum of Law,* ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 24. Plaintiff asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Id.* The Commissioner takes the position that

his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21.

## IV.     SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.     J. Theodore Brown, Jr., Ph.D.

On November 12, 2019, J. Theodore Brown, Jr., Ph.D., conducted a consultative psychological examination of Plaintiff. R. 470–75. Dr. Brown's initial impression of Plaintiff, who was 61 years old at the time of the examination, included the finding that "Claimant appears to be affected by symptoms of depression, anxiety, and borderline personality disorder." R. 470. Plaintiff reported that she had quit her job as a teacher in June 2019 because of her health. *Id.* Plaintiff reported the following symptoms:

> Claimant indicates difficulty getting to sleep, staying asleep, frequent wakening. This has been going on for about 2 years.
>
> She indicates being depressed, process of losing a house or having to go into a short sale, financial pressures and problems because she is not working, poor relationships with her son and daughter-in-law, feels unappreciated and disappointed by some of her children, family members. She has crying episodes on a weekly basis. She denies thoughts of death or suicide.
>
> *Energy level is pretty good, functional. She does what she has to do when she can.*
>
> \*\*\*
>
> Mood is down. She gets agitated, can yell, scream, and curse at times, but denies any physical or violent behavior.
>
> Memory for dates, appointments, and where she places things is poor. She forgets conversations, has poor focus and concentration.
>
> She describes having panic, anxiety symptoms, palpitations, sweating, trembling, hyperventilation, and pressure on her chest, usually she gets them at home when she is under pressure or stress. She does wake up at times periodically with night

terrors. This has been going on for a couple years at this point in time. She bites her lips on the inside to feel the pain and discomfort and to get relief from the tension. This has been going on weekly for some indefinite period of time. It seems to be a lifelong habit that she has adapted to.

Otherwise, she denies any thought disturbance or other behaviors, thoughts, or feelings that require the attention of a psychiatrist or psychologist.

R. 471–72 (emphasis added). Upon mental status examination, Plaintiff was pleasant and cooperative throughout the examination with an overall adequate presentation and appropriate eye contact. R. 472. Her appearance was younger than her stated age and she dressed in casual attire with good hygiene. *Id*. Her gait, posture, and motor behavior were normal. *Id*. She was able to remember three of three items immediately and two of three items after five minutes. *Id*. Plaintiff could not count backwards from 100 by 7s, but could count backwards from 30 by 3s. *Id*. Her speech was fluent and clear and she was able to express her thoughts and feelings without hesitation or delay. Her thought processes were coherent and goal directed with no evidence of illusions, delusions, hallucinations, or paranoia. *Id*. Plaintiff's affect was appropriate with full range of speech associated with thought affect; her mood was neutral and her sensorium was clear; she was oriented to person, place, and time; her cognitive/intellectual functioning was average; her insight was fair; and she was familiar with current events. R. 472–73. Plaintiff lived with her daughter and reported that she could dress, bathe, and groom herself, could drive, and shared cooking, cleaning, laundry, and shopping activities with her daughter who also helped Plaintiff manage her money. R. 473. Plaintiff's hobbies included reading and writing. *Id*. She had friends. *Id*. Plaintiff "usually spends her time at home moving about, taking care of her grandson, pacing herself, negotiating her energy, pain, and discomfort to do what she can when she can. She reads, writes, and does housework." *Id*. Dr. Brown found that that his evaluation results "appear to be consistent with Claimant's allegations and give basis for the following diagnosis:"

depressive disorder, unspecified; panic anxiety disorder; borderline personality disorder; and generalized anxiety disorder. *Id*. According to Dr. Brown, Plaintiff's prognosis was "very much contingent upon Claimant continuing to receive and benefit from mental healthcare support and treatment." *Id*. If Plaintiff remained in mental healthcare and treatment, Dr. Brown opined, she should be able to manage her own funds. *Id*.

**B.      Robin C. Wiley, L.C.S.W.**

On October 1, 2020, Robin C. Wiley, L.C.S.W.,[4] Plaintiff's treating therapist, signed a one-page letter addressed to "To Whom It May Concern[,]" stating as follows:

> . . . [Plaintiff] is a client currently under my care for mental health therapy. [Plaintiff] has been treated for Generalized Anxiety Disorder since 10/18/2018. During this time, she has experienced periods of increased panic accompanied by panic attacks. She is seen weekly for individual therapy utilizing Cognitive Behavioral Therapy and Mindfulness techniques.
>
> Her treatment plan includes goal related to increasing affect regulation, identifying triggers for anxiety and increasing coping skills.

R. 673.

On October 16, 2020, Dr. Wiley provided a one-page clinical summary of Plaintiff's treatment. R. 674. Plaintiff began therapy in October 2018 with weekly individual therapy sessions. *Id*. She "presented with symptoms related to increased anxiety and depression which includes panic attacks" and "was addressing stressors related to physical health issues, work issues and family dynamics. Her health and emotional concerns were the catalyst for her decision to retire in an effort to mitigate some of the stress triggers." *Id*. Dr. Wiley identified Plaintiff's treatment goals/current targeted behaviors as follows: Explore triggers for anxiety/depression;

---

[4] Both parties and the ALJ refer to this provider as "Dr. Wiley." The Court notes that briefing at the administrative level refers to this provider's credentials as "DSW" as well. R. 296. Based on this reference, and for convenience and continuity, the Court will also refer to this provider as "Dr. Wiley."

increase affect regulation; support transition to retirement; and increase appropriate coping skills related to managing stress. *Id*. Plaintiff's weekly individual sessions addressed these goals and Dr. Wiley used "Cognitive Behavioral therapy and Mindfulness techniques to help client to dispute negative thoughts and increase coping." *Id*. According to Dr. Wiley, Plaintiff "continues to experience anxiety accompanied by periods of depression which at times impair her ability to function optimally. She continues to experience worry related to life stressors and occasional panic attacks. She is open to therapeutic interventions provided by this clinician." *Id*. Dr. Wiley recommended that Plaintiff "[c]ontinue individual therapy weekly to address potential triggers associated with anxiety/depression and increase coping skills." *Id*.

## V.      DISCUSSION

### A.      Step Two

Plaintiff challenges the ALJ's determination at step two of the sequential evaluation process that Plaintiff's mental impairments were not severe. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 21–23.[5] Plaintiff's argument is not well taken.

The ALJ found at step two of the sequential evaluation process that Plaintiff's impairments of Sjorgren's syndrome, degenerative disc disease, and polymyalgia rheumatica were severe, and explained why Plaintiff's other impairments, including her mental impairments of depressive disorder and generalized anxiety disorder, were not severe. R. 17–19. The ALJ also went on to evaluate all of Plaintiff's impairments, including her mental impairments and the alleged limitations flowing from those impairments, through the remainder of the sequential evaluation. R. 19–25. Accordingly, even if the ALJ erred by not finding other severe

---

[5] Plaintiff raised this step two challenge in the context of her challenge to the RFC at step four. *See id*. To the extent that Plaintiff argues that her mental impairments required certain limitations in the RFC, the Court addresses that argument in the next section.

impairments, any such error at step two is harmless based on this record. *See Salles v. Comm'r of Soc. Sec.,* 229 F. App'x 140, 145 n.2 (3d Cir. 2007); *Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding."); *Auriemma v. Colvin,* No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015)("Because the ALJ found in [plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.").

## B.    RFC and Opinion Evidence

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination of a limited range of light work because the ALJ did not account for all the Plaintiff's severe and non-severe impairments and failed to properly consider the opinions of Dr. Brown and Dr. Wiley. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 11–21, 23–29; *Plaintiff's Reply Brief*, ECF No. 24, pp. 1–9. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer,* 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*,

777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds. Can occasionally balance, stoop, kneel, crouch and crawl. Can frequently handle and finger. Avoid extreme cold, heat, wetness, humidity and pulmonary irritants.

R. 19–20. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, Plaintiff's testimony at the first administrative hearing that she stopped working in June 2019 due to her physical and mental impairments and other factors, and her testimony at the second administrative hearing that "she retired from teaching due to issues with the teachers and administrative, which resulted in a class action suit"; Plaintiff's statement in her August 2019 function report that her activities of daily living included eating breakfast, getting dressed, watching TV or reading (although she needed to stop and refocus when reading, writing, or watching mysteries), preparing lunch, going to the store as needed and taking care of her grandson in the evening when his mother was at work (which involved making sure that he went to bed and did not hurt himself); evidence that she was independent in her personal care but that she reported difficulty washing her hair due to pain; her report that she did not need reminders, and could drive and manage her finances; evidence that she preferred to be alone and that

sometimes talking to people aggravated her; evidence that she had no difficulty with authority and could ask for help if overwhelmed; Plaintiff's testimony at the initial administrative hearing that she did not need an assistive device for walking or balance but that she experienced constant pain, dizziness, and loss of focus as well as right shoulder and knee pain; Plaintiff's testimony at the second administrative hearing that, after she last worked as a teacher in June 2019 (retiring due to harassment regarding a class action suit by teachers against the school district), she worked part-time (about 25 hours a week) until work for this position had "run out," but that she would have left that job in any event due to physical difficulties; evidence in the medical records that reflected, *inter alia*, left knee effusion in March 2014 and osteoarthritis of both knees; orthopedic treatment notes indicating adhesive capsulitis and arthralgia of the right shoulder; a March 2016 diagnostic arthroscopy of the right shoulder noting acromioclavicular joint arthritis; a distal clavicle excision; 2018 primary care notes reflecting complaints of sinus pain and congestion as well as complaints of left ankle pain, increased with walking and standing, x-rays of the ankle showing no acute findings but resulting in a diagnosis of tendonitis and a referral to physical therapy; therapy with Dr. Wiley for generalized anxiety disorder since October 2018; 2019 imaging of the ankles showing subcutaneous lipomas of both ankles; Plaintiff's complaint of right shoulder pain even at rest and worse with lifting but imaging showing no acute findings; diagnoses of hypertension and high cholesterol and a finding of elevated c-reactive protein, for which Plaintiff was referred to a rheumatologist; July 2019 treatment notes for acute sinusitis; treatment notes reflecting that Plaintiff presented as alert, oriented and with normal mood/affect; cardiology treatment notes from late 2018 through early 2019 reflecting complaints of intermittent palpitations and chest pain, but no syncope, occurring mainly when Plaintiff was working out; a 2018 exercise stress test that showed good exercise endurance, until Plaintiff

14

developed exercise limiting chest pain with ST depression, leading to a referral to an exercise nuclear stress test; rheumatology treatment notes from early 2019 for c-reactive protein levels and reports of right shoulder and bilateral arm pain, as well as knee pain, worse with activity; examination findings of full range of motion with no tender points noted and normal lab results regarding possible lupus; unremarkable x-rays of hands and wrists, with no sign of fracture or significant arthrosis; mild degenerative changes in the bilateral patellofemoral compartment and no acute abnormality or significant arthrosis in the feet; post operative changes in the right great toe and unremarkable imaging of the right shoulder; a February 2019 EKG showing normal sinus rhythm and labs showing high c-reactive protein, thought to be from a secondary cause and not cardiac related; psychological reviews at Plaintiff's cardiology appointments that consistently noted that Plaintiff was alert, oriented, and showing no evidence of overt discomfort, anxiety or depression; a March 2019 abdominal CT scan reflecting mild degenerative spondylosis of the lumbar spine with no evidence of acute process in the abdomen or pelvis; Plaintiff's complaints in April 2019 of fatigue, lack of sleep, and intermittent pain and a diagnosis of possible Sjorgren's syndrome and prescription for hydroxychloroquine; diagnoses during a May 2019 cardiac appointment of Sjorgren's syndrome, hyperlipidemia, hypertension, and abnormal c-reactive protein, and reports of intermittent palpitations and chest pain, and a finding of lowered c-reactive protein and, on EKG, a finding of normal sinus rhythm; findings at that appointment of a normal gait, being alert, oriented, and active in the decision making process; Plaintiff's report at a July 2019 rheumatology appointment that she experienced fatigue (improving) and lack of sleep but no pain; Plaintiff's report of frequent dry eyes, pain in her right hand, arm and knee, worse with activity and better with rest, arm stiffness lasting for hours and associated with numbness, tingling and muscle weakness treated with a corticosteroid injection in the right

shoulder; examination findings of full range of motion of the neck, the lumbar spine and all extremities with no sign of synovitis, swelling, warmth or tenderness; no tender points although lab results showed a weak positive for ANA and high inflammatory markers, resulting in a diagnosis of Sjorgren's syndrome; findings by Dr. Brown in November 2019 that Plaintiff presented as pleasant and cooperative with a "wide range of independence regarding activities involving both mental and physical factors that the claimant engages in" and that, *inter alia*, Plaintiff's mental health related impairments result in no more than a mild degree of limitation regarding daily activities; Plaintiff's report at a cardiology appointment in November 2019 of increased shortness of breath, fatigue, and chest pressure and denial of anxiety or depression; a notation of exertional dyspnea for which a stress test was ordered and blood pressure medication was also adjusted; a December 2019 stress test which was terminated due to fatigue, although Plaintiff was noted as having "good exercise tolerance for age" with no evidence of significant exercise induced dysrhythmia and no EKG abnormalities to suggest ischemia; January 2020 treatment notes reflecting Plaintiff's report of increased joint pain, including in hips, shoulders and knees as well as severe fatigue; findings during that visit of full range of motion of the spine and all extremities, with no tender points, and full muscle strength in all extremities, clear thought process with normal reasoning and normal and appropriate affect; Plaintiff's complaints at a February 2020 cardiology appointment of fatigue and chest pressure with findings of high c-reactive protein but no finding of connective tissue disorder[6]; treatment notes indicating continued "low sleep, but [Plaintiff] seems to be fine as no daytime sleepiness" and there was no evidence of new unstable angina or worsening edema; the suggestion that Plaintiff's worsening

---

[6] This is conclusion appears to have been changed later as Plaintiff was eventually diagnosed with polymyalgia rheumatica.

exertional dyspnea was possibly of cardiac origin; a recommendation that Plaintiff exercise 150 minutes per week and be on her feet for "400 hours a week,"[7] which the ALJ found to be consistent with an ability to perform work at a light exertional level; Plaintiff's complaints at an April 2020 rheumatology appointment of back, leg, and kidney pain, although kidney stones and infection were ruled out and Plaintiff was started on methotrexate; Plaintiff's complaints in July 2020 of worsening fatigue and muscle ache, worse with activity; Plaintiff's complaints in August 2020 of increased fatigue, difficulty falling asleep (but not sleeping during the day), and worsening pain; the August 2020 diagnoses of polymyalgia rheumatica due to myalgia, elevated ESR and severe fatigue, and acute low back pain without sciatica, with prescription for prednisone; Plaintiff's complaints at an August 2020 cardiology appointment of dizzy spells, muscle pain, chest pressure, and exertional dyspnea, but no palpitations, for which a Holter monitor was prescribed and an echocardiogram was ordered; a September 2020 transthoracic echocardiogram with findings consistent with "impaired relaxation," and stage 1 diastolic dysfunction; the opinions of the state agency consultants, which the ALJ found persuasive, that Plaintiff was able to perform work at the light exertional level, including her past relevant work as a teacher. R. 21–25. The ALJ went on to explain that "the objective evidence does not demonstrate the existence of limitations of such severity as to have precluded the claimant from performing all work on a regular and continuing basis at any time from the alleged onset date of disability." R. 25. The ALJ further explained this RFC determination as follows:

> The claimant's complaints have not been completely dismissed, but rather, have been included in the residual functional capacity assessment, to the extent that they are consistent with the evidence as a whole. The claimant's degenerative disc disease, various joint pains and diagnosed immune deficiency related conditions have been considered in limiting the claimant to work related activity at a light

---

[7] The ALJ assumed that the reference to "400 hours a week" was meant to be 40 hours per week.

exertional level with restrictions regarding climbing and postural movements.
Avoidance of temperature extremes and pulmonary irritants takes into account the
claimant's diagnosed immune disorders.

R. 25. In the view of this Court, this record contains substantial evidence to support the ALJ's

RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186

F.3d at 429.

Plaintiff, however, raises a number of challenges to the ALJ's RFC determination, which

the Court addresses in turn.

### 1.      Fatigue

Plaintiff first complains that the ALJ failed to properly consider how Plaintiff's well-

documented fatigue impacts her physical and mental stamina and time off task, particularly as it

relates to her ability to perform her past relevant work as a teacher. *Plaintiff's Memorandum of

Law*, ECF No. 14, pp. 16–17 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 24, pp. 1–2.

Plaintiff specifically argues that a limitation to light work with no time off for unscheduled

breaks, time off task, or days absent per month does not sufficiently account for her fatigue,

which flows from her Sjogren's syndrome and which the ALJ found to be severe along with her

degenerative disc disease and polymyalgia. *Id*. Plaintiff's argument is not well taken.

As a preliminary matter, to the extent that Plaintiff suggests that the ALJ's finding at step

two—*i.e.*, that Plaintiff's Sjorgren's syndrome, degenerative disc disease, and polymyalgia

rheumatica were severe—requires additional or more significant limitations than those included

in the ALJ's RFC, Plaintiff is mistaken. The United States Court of Appeals for the Third Circuit

has instructed that "no incantations are required at steps four and five simply because a particular

finding has been made at steps two and three. Those portions of the disability analysis serve

distinct purposes and may be expressed in different ways." *Hess v. Comm'r Soc. Sec.*, 931 F.3d

198, 209 (3d Cir. 2019). Because a claimant's RFC is the most that the claimant can do despite her limitations, the ALJ's RFC "'requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories'" and, "unlike the findings at steps two and three, the RFC 'must be expressed in terms of work-related functions[.]'" *Id*. (quoting SSR 96-8P, at *4, 6). "In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id*.

In addition, as detailed above, when fashioning the RFC determination, the ALJ expressly considered that Plaintiff indicated in July 2019 that her fatigue was improving, R. 24; that, although a stress test performed in December 2019 was terminated due to fatigue, Plaintiff was noted as having "good exercise tolerance for age" with no evidence of significant exercise indued dysrhythmia and no EKG abnormalities suggesting ischema, R. 23 (internal quotation marks omitted); that, although Plaintiff complained to her cardiologist in February 2020 of fatigue, treatment notes indicated that Plaintiff "seems to be fine as no daytime sleepiness" and her treating provider recommended that Plaintiff be on her feet 40 hours a week and exercise 150 minutes a week, R. 23 (internal quotation marks omitted); and the ALH found persuasive the opinions of the state agency medical consultants that Plaintiff was capable of performing light work, including her past relevant work as a teacher, R. 25. Moreover, as previously discussed, an ALJ need include only "credibly established" limitations in the RFC. *Rutherford*, 399 F.3d at 554; *see also Zirnsak*, 777 F.3d at 615 (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment

otherwise credible"). Although the record in this action reflects—and the ALJ expressly considered—Plaintiff's complaints of fatigue, for the reasons discussed in further detail below, the ALJ properly discounted the intensity, persistence, and limiting effects of Plaintiff's subjective statements. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler,* 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].") ; *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Accordingly, Plaintiff's challenge to the RFC based on a failure to properly consider her fatigue will not serve as a basis to remand this action.

### 2.    Right shoulder and adhesive capsulitis

Plaintiff next argues that the ALJ failed to properly consider Plaintiff's non-severe history of right shoulder arthroscopy and adhesive capsulitis, contending "there is overwhelming evidence that Plaintiff still experiences the symptoms resulting from these impairments." *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 17–18 (citing R. 69 (Plaintiff's testimony from hearing on October 15, 2020, that she is still unable to lift things over her head and it is painful to reach for items and to hold up her arm), 72 (testimony from October 15, 2020 hearing that the cortisone injections help her feel better for about a week or two and that she had not had an injection in the last year and a half because she was given prednisone, which was discontinued in

September 2021 because it was not working), 385 (rheumatology progress notes dated July 17, 2019, reflecting, *inter alia*, that Plaintiff's report that she had recently undergone a corticosteroid injection in her right shoulder), 391 (March 2019 rheumatology progress notes reflecting, *inter alia*, Plaintiff's complaints of pain in her right shoulder and right arm), 394 (March 2019 rheumatology progress notes reflecting, *inter alia*, Plaintiff's complaints of pain in her right shoulder and bilateral arms), 428 (February 2019 family practice progress notes reflecting Plaintiff's complaint of right should pain radiating into her right arm), 495 (October 2017 orthopedic note, "Plaintiff's shoulder still gets the achy pain"), 499 (April 2017 orthopedic notes reflecting Plaintiff's complaints of right shoulder pain and pain with lifting activities, overhead activities, reaching behind, and associated symptoms of stiffness, weakness), 503 (January 2017 orthopedic notes reflecting Plaintiff's complaints of difficulty writing on the board and inability to wash her back or reach behind her), 507 (August 2016 orthopedic progress notes reflecting, *inter alia*, that Plaintiff was in physical therapy and had received a cortisone injection), 509 (July 2016 orthopedic progress notes same), 515 (April 2016 record reflecting that Plaintiff had undergone a distal clavicle excision in March 2016), 520, 524 (June and July 2016 physical therapy progress notes), 551 (copy of March 2016 report of distal clavicle excision), 576 (August 2020 rheumatology progress notes reflecting Plaintiff's continued complaint of shoulder pain)); *Plaintiff's Reply Brief*, ECF No. 24, p. 5 (citing same). Plaintiff complains that this evidence establishes that she had difficulty, both before and after her alleged disability onset date, in reaching and that the ALJ failed to properly consider this impairment when crafting the RFC. *Id*. Plaintiff's arguments are not well taken.

As an initial matter, much of the evidence referred to by Plaintiff in this regard significantly predates Plaintiff's alleged disability onset date of June 30, 2019. *See* R. 495, 499,

503, 507, 509, 515, 524, 551. Although an ALJ may consider such evidence, *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 120 (3d Cir. 2020) (citing *Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007), and 20 C.F.R. § 416.912), such evidence is not entitled to controlling or, indeed, any particular weight. *Id*. at 120 (finding that the ALJ "was entitled to discount" an opinion letter where the opinion was written before the claimant's application date and alleged disability onset date and where the opinion was inconsistent with the medical record); *Dennis-Orshak v. Berryhill*, No. 3:18-CV-15987, 2020 WL 4364330, at *4 (D.N.J. July 30, 2020) (finding that the ALJ did not err in giving no weight to a report that predated the alleged disability onset date). Moreover, additional context and evidence contained in some of these records do not persuade this Court that the ALJ erred in failing to include a limitation for reaching in the RFC. *See, e.g.,* R. 495 (reflecting, *inter alia*, that the provider on October 16, 2017, was "pleased with her motion and function" and "[s]he is not taking anything for the pain. There is pain at the anterior aspect of the [right] shoulder. There is some numbness and tingling, but has subsided a lot since she was here last. There is no popping or clicking."), 499 (reflecting on April 17, 2017, that "Patient is doing the best I have seen her in a while we will go ahead and have her continue to work on the flexibility stretching strengthening and conditioning and I will see her back again as needed"), 503–04 (January 9, 2017, orthopedic progress notes f reflecting, *inter alia*, that Plaintiff has diffuse shoulder tenderness, but full active and passive range of motion in her shoulders with pain at end ranges).

In addition, the evidence recited by the ALJ and detailed above provides substantial support for the RFC for light exertion found by the ALJ, including, *inter alia*, imaging of the right shoulder in 2019 that showed no acute findings, R. 22; an early 2019 examination that revealed full range of motion and no tender points despite Plaintiff's complaints of shoulder and

22

bilateral arm pain, and unremarkable imaging of the right shoulder, R. 23; findings in January 2020 of full range of motion of the spine and all extremities with no tender points observed and full muscle strength in all extremities despite Plaintiff's report of increased pain in the shoulders, R. 24; the state agency consultants' opinions that Plaintiff could perform light exertional work, including past relevant work as a teacher, R. 25; Plaintiff's reported activities of daily living, including, *inter alia*, driving, grocery shopping, doing laundry and other housework, and being independent with personal care despite some reported difficulties with such care, R. 20, 21, 24; and the ALJ's finding that Plaintiff's subjective statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not entirely consistent with the record evidence, R. 21, 25, a finding that is supported by substantial evidence for the reasons discussed in more detail below; *cf. Johnson v. Comm'r of Soc. Sec.*, 263 F. App'x 199, 203 (3d Cir. 2008) (rejecting the claimant's challenge to the RFC that the Plaintiff "retains the residual functional capacity to lift and carry up to twenty pounds occasionally and ten pounds frequently, sit for six hours and stand and/or walk for two hours in an eight hour workday, and occasionally climb stairs, balance, kneel, crouch, crawl or stoop" where, *inter alia*, it was noted that the claimant "did not use a cane or crutches, was able to dress and undress herself, was not uncomfortable while seated, experienced no motor abnormality, and had normal range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles" and the Plaintiff reported that she "could take care of her personal needs, drive her car, and walk two blocks before resting" and, during examination, "she could dress and undress without assistance, get on and off the examination table without difficulty, successfully toe-and-heel walk, and demonstrate full range of motion").

To the extent that Plaintiff points to evidence that she believes supports her position that the RFC required additional limitations to accommodate her shoulder impairment, this Court has already explained that, as long as the substantial evidence standard is met, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion[.]" *Johnson*, 497 F. App'x at 201; *see also Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880. For these reasons, then, the Court is not persuaded that the ALJ committed reversible error when considering Plaintiff's non-severe history of right shoulder arthroscopy and adhesive capsulitis in crafting the RFC.

### 3.   Stage 1 diastolic dysfunction / heart palpitations / chest pain and pressure

Plaintiff further argues that the ALJ should have taken "into consideration in the RFC" her stage 1 diastolic dysfunction, intermittent heart palpitations, and chest pain/chest pressure because light exertion "requires a good deal of walking or standing." *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 18–19 (quoting SSR 83-10, and citing, *inter alia*, R. 90, 92, 312, 315–16, 320, 323, 327, 346, 587, 595, 622, 632, 640, 662) (internal quotation marks omitted); *see also Plaintiff's Reply Brief*, ECF No. 24, pp. 2–3. Plaintiff complains that the evidence establishes that she experienced chest pains over a two-year period, and not just when she was working, as the ALJ found. *Id*. Plaintiff's argument is not well taken.

To the extent that Plaintiff relies on evidence that predates her alleged disability onset date of June 30, 2019, R. 320 (progress notes dated October 30, 2018), 323 (same), 327 (progress notes dated August 21, 2018), 346 (HeartStride Final Report dated August 21, 2018), this Court has already explained that this evidence is not entitled to controlling—or to any particular—weight. *See Louis*, 808 F. App'x at 120; *Dennis-Orshak*, 2020 WL 4364330, at *4. In fact, the ALJ expressly considered this evidence. R. 22. Notably, and contrary to Plaintiff's suggestion,

the ALJ also considered evidence from May 2019 of intermittent palpitations and chest pain, R. 22; as well as complaints of palpitations and chest pressure in November 2019, R. 23–24; and complaints of chest pressure in February and August 2020, R. 23. Although the ALJ noted these complaints and findings, the ALJ also considered contrary evidence that supported the RFC determination. R. 22 (referring to February 2018 and May 2019 EKGs that showed normal sinus rhythm), 23 (referring to a December 2019 stress test that was terminated due to fatigue, but during which Plaintiff was noted to have "good exercise tolerance for age," and there was no evidence of significant exercise induced dysrhythmia, or abnormalities to suggest ischemia; and referring to a February 2020 cardiology appointment at which Plaintiff's exertional dyspnea was characterized as stable and following which it was recommended that Plaintiff exercise for 150 minutes a week and be on her feet for 40 hours a week, which the ALJ noted was consistent with the ability to perform work at a light exertional level). To the extent that Plaintiff insists that her cited evidence requires additional—otherwise unspecified—RFC limitations, her contention in this regard boils down to simply a disagreement with the ALJ—who has the duty to craft the RFC—and whose decision the Court has already explained is supported by substantial evidence. *See Chandler*, 667 F.3d at 361; *Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); *Markoch v. Comm'r of Soc. Sec.*, No. 1:20-CV-00417, 2020 WL 7586953, at *4-5 (D.N.J. Dec. 22, 2020) ("With regard to their impact on the RFC determination even when those impairments are considered not severe, Plaintiff does not articulate what additional restrictions should have been implemented. It is Plaintiff's burden to establish the severity of her impairments, and Plaintiff's challenge to the ALJ's consideration of her non-severe impairments amounts to mere disagreement with his analysis rather than

showing any substantive error."). The Court therefore declines Plaintiff's invitation to re-weigh

the evidence or to impose her—or this Court's—own factual determination. *See Chandler*, 667

F.3d at 359; *Zirnsak*, 777 F.3d at 611.

### 4.    Right knee and left ankle

Plaintiff also complains that the ALJ failed to properly consider the pain in her right knee

and left ankle when crafting the RFC. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 19–20;

*Plaintiff's Reply Brief*, ECF No. 24, pp. 5–6. Plaintiff specifically argues that the record contains

"overwhelming evidence that she has further limitations climbing stairs" because of her right

knee. *Id*. Plaintiff further argues that the ALJ's failure to discuss whether she considered

Plaintiff's tendonitis or bilateral subcutaneous lipomas in her ankles when crafting the RFC or

how it impacted Plaintiff's ability to perform work functions constituted harmful error. *Id*. This

Court disagrees.

As detailed above, the ALJ considered, *inter alia*, the following evidence: Plaintiff does

not use an assistive device for balance or walking, R. 19, 21; in 2018, Plaintiff complained of left

ankle pain but x-rays of the ankle showed no acute findings and she was diagnosed with

tendonitis and referred to physical therapy (which was the only recorded treatment for this

condition), R. 22; in early 2019, Plaintiff complained of, *inter alia*, knee pain that was worse

with activity, but examination revealed full range of motion with no tender points noted, R. 23;

in May 2019, Plaintiff walked with a normal gait, R. 22; in July 2019, imaging of the ankles

revealed subcutaneous lipomas in both ankles, R. 22; in July 2019, Plaintiff complained of, *inter*

*alia*, pain in her knees that was worse with activity, but examination revealed full range of

motion of all neck, lumbar spine, and all extremities with no sign of synovitis, swelling, warmth,

or tenderness, and no tender points, R. 24; a December 2019 stress test was ultimately terminated

due to fatigue, but it was noted that Plaintiff had a "good exercise tolerance of age", R. 23; in January 2020, Plaintiff again had full range of motion of the spine and all extremities with no tender points observed and she retained full muscle strength in all extremities, R. 24; and in February 2020, it was recommended that Plaintiff exercise 150 minutes a week and be on her feet for 40 hours a week, R. 23. This evidence provides substantial support for the RFC determination for light work with, *inter alia*, occasional climbing of stairs. R. 19–20.

Although Plaintiff insists that she has "further limitations climbing stairs" than the ALJ's RFC accommodated, Plaintiff's contention in this regard is based on simple rank speculation unsupported by any medical opinion. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 19–20; *Plaintiff's Reply Brief*, ECF No. 24, pp. 5–6. As previously discussed, an ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-cv-2115, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record."). Finally, although Plaintiff complains that the ALJ should have more fully discussed Plaintiff's tendonitis, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record. Even in *Fargnoli*, the court conceded that it did not expect the ALJ to make reference to *every* piece of relevant information." *Hur v. Barnhart,* 94 F. App'x 130, 133 (3d Cir. 2004) (citing *Fargnoli,* 247 F.3d at 38) (emphasis in the original). In any event, Plaintiff concedes that the ALJ did in fact acknowledge a diagnosis of tendonitis. *Plaintiff's Memorandum of Law*, ECF No. 14, p. 20 (citing R. 22). Notably, even presuming for present purposes that the ALJ erred in failing to more fully discuss Plaintiff's tendonitis, Plaintiff has not explained—particularly in light of evidence recounted herein—how any such error harmed her. *See id*. (pointing to evidence that Plaintiff attended physical therapy only in September 2018,

before her alleged disability onset date; that Plaintiff had mild soft tissue swelling over the lateral inframalleolar region and posterior tibial tendinitis in her left leg and pain in her left ankle and her joints in the left foot in September 2018; and pointing to subjective complaints of pain) (citing R. 72–73, 664 667, 669, 670); *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case"). For these reasons, Plaintiff has not shown that the ALJ's consideration of Plaintiff's right knee and left ankle conditions requires remand.

### 5.    Dr. Brown and Dr. Wiley

Plaintiff also argues that the ALJ erred in her consideration of the opinions of Dr. Brown and Dr. Wiley, resulting a flawed RFC. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 22–29; *Plaintiff's Reply Brief*, ECF No. 24, pp. 6–9. Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. Moreover, the ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli*, 247 F.3d at 42) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record

28

consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[8] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical

---

[8] As previously noted, Plaintiff's application for benefits was filed on July 21, 2019.

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b). "Specifically, the ALJ must explain how [she] considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how [she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec*., No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In the present case, the ALJ crafted an RFC for a limited range of light work. R. 19–20. In making this determination, the ALJ found, *inter alia*, Dr. Brown's assessment "not persuasive[,]" reasoning as follows:

> Regarding the claimant's mental health, in November 2019, psychologist J. Theodore Brown, Jr. PhD provided a consultative examination at the request of the State agency. The claimant drove herself to the appointment, and presented as pleasant and cooperative. She indicated she was seeing a therapist weekly since 2018. She reported difficulty with sleep for the past two years. She indicated she was depressed, with stressors including the loss of her house, financial pressures and a poor relationship with her son. She stated her energy level was "pretty good," that she was "functional" and did "what she has to do when she can." She reported poor focus, concentration and memory. She indicated she would get agitated and yell at times, but did not engage in physical or violent behavior. The

claimant described symptoms of panic, anxiety, palpitations and chest pressure, occurring usually at home when stressed. Her thought process was described as coherent and goal directed, with appropriate affect and neutral mood. She was oriented, with average cognitive function and fair insight. The claimant stated she cold cook, clean, do laundry and shop. She reported her daughter helped with managing finances. She stated she paced herself with housework. She stated she took care of her grandson. She reported that she had friends. Dr. Brown provided a diagnosis of depressive disorder, unspecified, panic anxiety disorder; borderline personality disorder and generalized anxiety disorder. (Exhibit 5F). *This assessment, which does not provide an analysis of the claimant's work related abilities and/or limitations, is not persuasive. However, it does show the wide range of independence regarding activities involving both mental and physical factors that the claimant engages in. Overall it supports a conclusion that the claimant's mental health related impairments result in no more than a mild degree of limitation regarding daily activities, and are therefore non severe*. It is also noted that the diagnosis of borderline personality disorder, assessed from a single encounter with Dr. Brown, is not noted by her treating psychologist.

R. 24–25 (emphasis added). The Court finds no error with the ALJ's evaluation in this regard. In

discounting Dr. Brown's assessment, the ALJ appropriately noted that this psychologist had

provided no opined functional abilities or limitations. *See id*.; *see also* 20 C.F.R. §

404.1513(a)(2) ("A medical opinion is a statement from a medical source about what you can

still do despite your impairment(s) and whether you have one or more impairment-related

limitations or restrictions in" certain listed abilities); *Scheel v. Comm'r of Soc. Sec*., No. CV 20-

5077, 2021 WL 4477163, at *4 (E.D. Pa. Sept. 30, 2021) ("Dr. Shipkin's letter does not qualify

as a medical opinion that the ALJ was required to evaluate. Indeed, Dr. Shipkin never opined on

Scheel's functional limitations or what activities she could or could not perform in a work

setting, or otherwise articulated Scheel's work-based limitations. Accordingly, Dr. Shipkin's

letter does not contain an 'opinion' as defined in the regulations."); *Perry v. Saul*, No. 1:19-CV-

1923, 2021 WL 1701300, at *17 (M.D. Pa. Apr. 29, 2021) (finding that the ALJ "adequately

discussed" the medical opinions and weight assigned to such opinions where, *inter alia*, the ALJ

considered an opinion from a treating physician "but she concluded that it had little evidentiary

weight due to the fact that no specific functional limitations were noted"). It was also proper for the ALJ to consider other record evidence, including Plaintiff's daily life activities, when analyzing Dr. Brown's findings and the extent of Plaintiff's mental impairments. *See* 20 C.F.R. § 404.1520c(c)(2); *Newcomb v. Kijakazi*, No. 3:20-CV-01552, 2022 WL 178820, at *9 (M.D. Pa. Jan. 18, 2022) (affirming ALJ's denial of benefits where, *inter alia*, where the ALJ considered an opinion in conjunction with the claimant's "activities of daily living, including caring for his young son, managing his own personal care, shopping, mowing, cooking, cleaning, and driving, the ALJ found that '[w]hile none of these activities alone [are] dispositive, taken together they suggest that [the claimant] is capable of performing work activity on a sustained and continuous basis within the above parameters'") (citations omitted); *cf. Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 121 (3d Cir. 2020) (finding ALJ was "entitled to discount" a treating source's earlier assessment "where it was undermined by the more 'detailed, longitudinal picture" provided by his later medical assessments[,]" which revealed that the claimant was "consistently calm and cooperative upon exam, and her prognosis was 'good'" and objective evidence supported the ALJ's finding that mental impairments did not prevent the claimant from engaging in substantial gainful activity where "she was consistently noted to be calm and cooperative, reportedly got along with immediate family, friends, and neighbors, could shop in stores by herself, attended community events, and had consistently normal findings with her cognition, memory, speech, judgment and insight"); *Celento v. Comm'r Soc. Sec.*, 613 F. App'x 205, 206–07 (3d Cir. 2015) (noting that daily activities such as, *inter alia*, driving "require at least some . . . mental concentration"); *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity."); *D.C. v. Comm'r of Soc. Sec.*,

No. CV 20-2484, 2021 WL 1851830, at *6 (D.N.J. May 10, 2021) ("Her ability to drive, prepare meals, manage funds, shop, and take a cruise also contradicted her claims that she had difficulty concentrating, remembering information, and engaging in social activities."). The ALJ also implicitly considered Dr. Brown's normal or mild findings when considering this assessment and whether these findings imposed any mental limitations on Plaintiff's ability to function. R. 24–25; *see also* 20 C.F.R. § 404.1520c(1). In the view of this Court, the ALJ's discussion contains substantial evidence to support the ALJ's consideration of Dr. Brown's assessment as well as the effect of Plaintiff's mental impairments on her ability to function and the ultimate RFC determination.

Plaintiff, however, contends that the ALJ engaged in prohibited cherry picking when concluding that Dr. Brown's assessment shows Plaintiff's ability to engage in a wide range of independence regarding activities involving both mental and physical factors, asserting that Plaintiff "shares in" the cooking, cleaning, laundry and shopping with her daughter and that Plaintiff must pace herself and accommodate her energy, pain, and discomfort when performing activities. *Plaintiff's Memorandum of Law*, ECF No. 14, p. 28. Plaintiff's argument is not well taken. Although the ALJ did not expressly state that Plaintiff "shares in" the cooking, cleaning, laundry, and shopping with her daughter, the Court is not persuaded that this fact undermines the ALJ's consideration of the evidence, nor does it otherwise require remand.

As an initial matter, nothing in the evidence definitively establishes that Plaintiff is unable to complete these activities without assistance; the evidence simply suggests that Plaintiff and her daughter both participate in these tasks.[9] Moreover, the statements of both Plaintiff and

---

[9] Notably, Plaintiff's daughter specified in a function report that Plaintiff spends, *inter alia*, half an hour ironing and three to five hours doing laundry, depending on the loads and the washing and drying tims. R. 232.

her daughter further establish that Plaintiff was capable of independently, *inter alia*, driving, preparing lunch, going to the store, doing laundry, ironing, going grocery shopping on a weekly basis, and managing her finances. R. 20–21. As detailed above, Plaintiff represented to Dr. Brown that her energy level was "pretty good," that she was "functional," and that she did "what she has to do when she can"; according to Dr. Brown, Plaintiff's thought processes were coherent and goal directed; she had an appropriate affect and her mood was neutral; she was oriented and had average cognitive functioning and fair insight. R. 24. Finally, as previously explained, as long as the substantial evidence standard is met, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion[.]" *Johnson*, 497 F. App'x at 201; *see also Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880. In light of this evidence, Plaintiff has not established that the ALJ engaged in prohibited cherry picking.

In continuing to criticize the ALJ's consideration of Dr. Brown's findings, Plaintiff complains that the ALJ failed to consider Dr. Brown's personal examination of Plaintiff, his understanding of the Agency's definition of disability and special program knowledge, and his specialty in the field. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 28–29. The Court disagrees. Even assuming that Dr. Brown's assessment qualified as a medical opinion, the only regulatory factors that the ALJ was then required to consider were supportability and consistency. 20 C.F.R. § 404.1520c(a), (b)(2), (c)(1), (2). The ALJ implicitly considered these factors when she noted Dr. Brown's own examination findings as well as Plaintiff's statements about her daily life activities and evidence from a treating source. R. 24–25; *cf. Diaz*, 577 F.3d at 504 ("The ALJ, of course, need not employ particular 'magic' words: '*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.'")

34

(quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). A fair reading of the ALJ's decision makes clear that the ALJ implicitly considered these factors—*i.e.*, Dr. Brown's personal examination of the Plaintiff; his understanding of the definition of disability and special program knowledge, and field specialty—when considering Dr. Brown's assessment. In particular, the ALJ expressly noted Dr. Brown's specialty. R. 24 (noting that Dr. Brown was a psychologist with a "PhD"), and also recognized that Dr. Brown had personally examined Plaintiff at the request of the State agency. *See id*. Based on this record, remand is not required on this basis.

Plaintiff also contends that the ALJ failed in her duty to develop the record and should have recontacted Dr. Brown if the ALJ "feels the opinion is too vague." *Plaintiff's Memorandum of Law*, ECF No. 14, p. 29 (citing 20 C.F.R. § 404.1519p(b)). This Court disagrees. This regulation provides that, if a consultative examination report "is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1519p(b). As this Court has already explained in another decision, the "[k]ey here is the meaning of 'inadequate or incomplete.' Multiple courts in the Third Circuit have explained that a report by a consultative examiner is not 'inadequate or incomplete' if it clearly outlines the medical examination but the ALJ disagrees with the consultative examiner's ultimate conclusion." *John G. v. Comm'r of Soc. Sec.*, No. 1:21-CV-17256, 2022 WL 3678108, at *8 (D.N.J. Aug. 25, 2022) (collecting cases). In this case, as previously detailed, the ALJ considered Dr. Brown's underlying examination findings when discounting Dr. Brown's assessment and crafting the RFC. Accordingly, Dr. Brown's "examination was not 'inadequate or incomplete' such that the ALJ was required to contact the doctor for clarification." *Id*.

Plaintiff also contends that the ALJ erred in discounting Dr. Wiley's opinion. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 22–27; *Plaintiff's Reply Brief*, ECF No. 24, pp. 6–9. This Court again disagrees. At step four, the ALJ expressly considered Dr. Wiley's opinions, but found them of "limited persuasive value[,]" explaining as follows:

> The claimant has been engaging in therapy for generalized anxiety disorder since October 2018, with therapist Dr. Robin C. Wiley, LCSW. In a statement from October 2020, Dr. Wiley indicated that they were addressing stressors related to physical health, work issues and family dynamics. Triggers for anxiety and depression were being explored. The claimant's goals included increasing coping skills related to managing stress and supporting transition to retirement. The claimant was described as continuing to experience anxiety accompanied by periods of depression, which "at times impair her ability to function optimally." She was noted as continuing to experience worry related to life stressors and occasional panic attacks. (Exhibits 11F and 12F). These letters are of limited persuasive value. While they are not functional opinions, have been considered. These summarize the circumstances for which the claimant sought counseling and the type of help she's receiving. However, there is no function by function analysis regarding the claimant's work related abilities and/or limitations. There are no mental health assessments provided indicating there are any cognitive, memory, concentration or social interaction issues interfering with the claimant's ability to function in a work-like setting. Therefore, they are of limited persuasive value.
>
> As noted above, at multiple medical appointments, the claimant has denied anxiety or depression and presents as alert, oriented, with no overt symptoms of anxiety or depression, and fully precipitating [sic] regarding medical decision making. (Exhibits 2F, 4F, 6F and 9F).

R. 25. In other words, although the ALJ properly found that Dr. Wiley had not provided functional opinions, she went on to consider Dr. Wiley's findings and reports and implicitly considered the supportability and consistency of those findings and reports, as well as Plaintiff's treating relationship with Dr. Wiley and that provider's specialty. *Id*. Moreover, the ALJ properly noted that the record contained no mental health assessments indicating any cognitive, memory, concentration or social interaction issue interfering with Plaintiff's ability to function in a work-like setting. *Id*. Indeed, the ALJ expressly considered that Plaintiff denied anxiety and

depression and presented as alert, oriented, with no symptoms of anxiety or depression and fully participating in the medical decision-making. *Id*. The Court finds no error with the ALJ's consideration in this regard. *See* 20 C.F.R. §§ 404.1513(a)(2), 404.1520c(c)(1), (2), (3), (4); *Scheel*, 2021 WL 4477163, at *4; *Perry*, 2021 WL 1701300, at *17; *cf. Louis*, 808 F. App'x at 121.

Plaintiff insists that Dr. Wiley rendered an opinion on "how Plaintiff's mental health impairments interfere with her ability to function in a work-like setting and should have been properly considered." *Plaintiff's Memorandum of Law*, ECF No. 14, p. 26. As detailed above by the ALJ, R. 25, and as this Court has already quoted in detail, Dr. Wiley did not in fact offer a function-by-function analysis of Plaintiff's work-related abilities and/or limitations. R. 673–74. To the extent that Plaintiff contends that Dr. Wiley's statement that Plaintiff "continues to experience anxiety accompanied by periods of depression which at times impair[s] her ability to function optimally" qualifies as a functional limitation, the ALJ expressly considered this statement. R. 25. Even assuming that the ALJ erred in failing to more fully discuss this portion of Dr. Wiley's statement, any such error is harmless. Dr. Wiley's statement is, at best, ambiguous and lacks any specification as to how or in what degree Plaintiff's mental conditions impair her. *See id*. Under these circumstances, the Court concludes that the ALJ did not err in discounting any opinion of Dr. Wiley and in failing to include otherwise unidentified limitations in the RFC in light of any such opinion. *See Perry*, 2021 WL 1701300, at *17.

Plaintiff goes on to complain that the ALJ erred in relying on the opinions of the state agency reviewing consultants rather than on Dr. Brown and Dr. Wiley, who personally examined Plaintiff. *Plaintiff's Reply Brief*, ECF No. 24, pp. 8–9. Because, for the reasons already discussed, substantial evidence supports the ALJ's consideration of the findings of Dr. Brown

and Dr. Wiley, Plaintiff's argument is not well taken. Moreover, the state agency consultants

expressly considered Dr. Brown's report and concluded that his findings "[we]re contraindicative

of [the] presence of any diagnosable mental [disorder] beyond mild adjustment [disorder]." R.

104, 106. Notably, as set forth in the ALJ's recitation of the evidence at step four, including

normal or only mild mental status examination findings, the ALJ ultimately found no functional

limitations flowing from those impairments, a determination that is supported by substantial

evidence. R. 20–25; *see also D.C. v. Comm'r of Soc. Sec.*, No. CV 20-2484, 2021 WL 1851830,

at *6 (D.N.J. May 10, 2021) ("[T]he Commissioner is correct that an RFC assessment does not

need to contain in-depth analysis on mental impairments when the ALJ finds earlier in his

opinion that a claimant's mental impairments are no greater than mild. . . . Thus, even if the

ALJ's failure to analyze the mild mental limitations constituted an error, a dubious proposition, it

still does not warrant reversal."); *cf. Younge v. Berryhill*, No. CV 16-5271, 2017 WL 2978758, at

*13 (E.D. Pa. May 31, 2017) ("The ALJ adequately discussed why plaintiff's mental impairment

was not severe, and was therefore not required to discuss the mental impairment in the RFC

evaluation. As such, we find that the ALJ properly formulated the RFC assessment" that did not

include any mental limitations); *Marchionna v. Comm'r of Soc. Sec.*, No. 13-329, 2015 WL

12550917, at *2 (W.D. Pa. Jan. 29, 2015) (finding "no error with respect to the failure to include

social functioning limitations in the RFC" where the Plaintiff had only "mild difficulties" in

social functioning and a medical opinion to which the ALJ assigned great weight found that

"Plaintiff was not significantly limited in any area of social interaction or adaptation"). While

Plaintiff disagrees with the ALJ's failure to include any mental limitations in the RFC, Plaintiff's

disagreement with the ALJ—whose duty it isto craft the RFC and whose decision the Court has

already explained is supported by substantial evidence—will not serve as a basis for remand of

this matter. *See Chandler*, 667 F.3d at 361; *Perkins*, 79 F. App'x at 514–15; *Markoch*, 2020 WL 7586953, at *4–5. The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose her–or this Court's–own factual determination in this regard. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of Dr. Brown's assessment and Dr. Wiley's opinions.

## C.     Plaintiff's Subjective Statements

Plaintiff also challenges the ALJ's consideration of her subjective complaints, contending that her testimony—particularly regarding her complaints of dizziness, fatigue, and mental impairments—is consistent with the ecord evidence. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 29–32; *Plaintiff's Reply Brief*, ECF No. 24, p. 9. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit

39

an individual's ability to perform work-related activities[.]" *Id. See also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 20–25. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 21. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support her findings, including, *inter alia*, Plaintiff's testimony at the initial hearing that she stopped working as a teacher in June 2019 due to impairments and other reasons, but testified at the subsequent administrative hearing that she retired from teaching due to issues with teachers and the administration; her daily activities; the fact that she did not need an assistive device for walking or balance and walked with a normal gait; shoulder imaging that showed no acute findings or unremarkable findings; the fact that Plaintiff presented at appointments as alert and oriented, with normal mood/affect or no evidence of overt discomfort, anxiety or depression, and was active in the decision making process; findings that she had average cognitive function and fair insight; the finding that Plaintiff had "good exercise tolerance for her age"; the recommendation that Plaintiff exercise 150 minutes a week and be on her feet 40 hours a week; Plaintiff's statement in July 2019 that her fatigue was improving and the February 2020 notation by her cardiologist that Plaintiff continued to "have low sleep but seems to be fine as no daytime sleepiness"; and examination findings of full range of motion, full muscle strength, and no noted tender points. R. 21–25. The ALJ also explained that she did not completely dismiss Plaintiff's complaints; instead, she explained that she fashioned an RFC that took into consideration Plaintiff's conditions:

> In summary, while the claimant has medically determinable impairments that could reasonably cause some symptoms and limitations, the allegations are considerably broader and more restricted than is established by the medical evidence. This is not to say that the claimant was symptom free or did not experience difficulty performing some tasks. However, the objective evidence does not demonstrate the existence of limitations of such severity as to have precluded the claimant from performing all work on a regular and continuing basis at any time from the alleged onset date of disability.

> The claimant's complaints have not been completely dismissed, but rather, have been included in the residual functional capacity assessment, to the extent that they are consistent with the evidence as a whole. The claimants degenerative disc disease, various joint pains and diagnosed immune deficiency related conditions have been considered in limiting the claimant to work related activity at a light exertional level with restrictions regarding climbing and postural movements. Avoidance of temperature extremes and pulmonary irritants takes into account the claimant's diagnosed immune disorders.

R. 25. In the view of this Court, the record in this action provides substantial support for the ALJ's decision to discount somewhat Plaintiff's subjective statements. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff challenges the ALJ's reasoning in this regard, arguing first that the ALJ erred in failing to provide any analysis as to how Plaintiff's statements were considered; Plaintiff specifically contends that her testimony and the record were, in fact, consistent. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 31–32 (citations omitted). This Court disagrees. The ALJ's detailed account of the record evidence as well as her explanation of her consideration of this evidence belies Plaintiff's assertion. In any event, the Court has already explained that it must affirm the ALJ's decision where, as here, that decision is supported by substantial evidence; this is true, moreover, even if Plaintiff points to evidence that supports the opposite conclusion. *See Johnson*, 497 F. App'x at 201.

Plaintiff also complains that the ALJ erred in failing to consider Plaintiff's "outstanding work history" prior to the alleged disability onset date, as required by 20 C.F.R. § 404.1529(c)(3). *Plaintiff's Memorandum of Law*, ECF No. 14, p. 32. Plaintiff's argument is not well taken. As previously noted, the ALJ was not required to discuss every piece of evidence and every regulatory factor. *See Lewis v. Comm'r of Soc. Sec.*, No. CV 15-1587, 2016 WL 4718215, at *7 (D.N.J. Sept. 9, 2016) ("The fact that the ALJ did not discuss all of the § 404.1529 factors does not warrant remand, given that his credibility determination was supported by substantial

evidence."); *Mason v. Colvin*, No. 15-1861, 2015 WL 6739108, at *6 (D.N.J. Nov. 3, 2015)

("The list [of factors contained in 20 C.F.R. § 404.1529(c)] is not comprehensive, nor is it

mandatory for ALJs to go through each factor on the list in their opinions.") (citing 20 C.F.R. §

404.1529(c)(3)). Notably, the United States Court of Appeals for the Third Circuit has upheld an

ALJ's evaluation of a claimant's subjective complaints where the ALJ did not "explicitly discuss

his years of uninterrupted employment[,]" but where the ALJ did explain why other evidence in

the record belied the claimant's subjective complaints. *Sanborn v. Comm'r of Soc. Sec.*, 613 F.

App'x 171, 177 (3d Cir. 2015); *see also Forcinito v. Comm'r of Soc. Sec.*, No. CIV. 12-6940,

2014 WL 252095, at *9 (D.N.J. Jan. 23, 2014) ("[W]ork history is only one of many factors the

ALJ may consider in assessing claimant's credibility. . . . Work history is not dispositive of

credibility and the question of credibility is left to the ALJ's discretion after considering all of

the relevant factors.") (citations omitted). In the present case, as discussed, the ALJ detailed why

other record evidence undermined Plaintiff's subjective complaints. R. 21–25.

For all these reasons, the Court concludes that the ALJ sufficiently explained her

reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are

supported by substantial evidence in the record and are therefore entitled to this Court's

deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306

F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony

regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn*, 717

F.2d at, 873); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the

ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a

discussion of claimant's subjective complaints and cited Claimant's daily activities and objective

medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints will

not serve as a basis for remand of this action. *Id.*

**D.      Third Party Statement**

Plaintiff contends that the ALJ "fail[ed] to consider" a function report completed by

Plaintiff's daughter; Plaintiff also contends that the ALJ improperly considered that report.

*Plaintiff's Memorandum of Law*, ECF No. 14, pp. 32–33.

Plaintiff's first contention is unavailing. When crafting the RFC, the ALJ expressly

considered a function report completed by Plaintiff's daughter, explaining as follows:

> Also in August 2019, the claimant's daughter, . . . provided a third party function
> report. The claimant was noted as cooking daily, needing assistance with
> overhead reaching such as for cabinets; did laundry, ironing, grocery shopped
> weekly and managed her own finances. The claimant was noted as not needing
> reminders for personal care or taking medication, and going outside daily
> unaccompanied. The claimant was described as resting between activities, and not
> going anywhere on a regular basis, preferring to stay to herself. The claimant was
> described as not able to do a lot of exercise or go to the gym. Writing was also
> noted as difficult. The claimant was described as able to lift about ten pounds,
> getting dizzy with standing , and knee pain if walk[ing] too long. Kneeling,
> squatting and stairs were noted as hurting the claimant's knees. Some difficulty
> with memory, resulting in tasks not being completed was described, as well as
> difficulty with concentration. The claimant was noted as handling stress as well as
> anyone else, asking for help if things got too much. The claimant was noted as not
> changing her routine. (Exhibit 4E). This assessment has been read and considered,
> and reflects that the claimant is capable of performing a wide range of daily tasks.

R. 21. Plaintiff's first contention in this regard is without merit.

In her second contention, Plaintiff argues that the ALJ failed to properly consider the

report of Plaintiff's daughter because the ALJ cherry picked portions "to show that Plaintiff is

not disabled at the exclusion of evidence therein which supports a finding of disability."

*Plaintiff's Memorandum of Law*, ECF No. 14, p. 33. In advancing this argument, Plaintiff

concedes that Plaintiff can in fact cook, do laundry, iron, read, watch TV, and write, but she

notes that her daughter also stated that Plaintiff needed assistance in reaching overhead while

cooking; used the microwave for cooking because it was too painful to pick up pots and pans,

wash dishes, or reach in cabinets; that Plaintiff finds it difficult to remember things, so tasks are not always completed and she needs instructions to be repeated and cannot concentrate; that she rests between activities and goes nowhere regularly. *Id.* (citations omitted). The Court is not persuaded that this issue requires remand. As detailed above and contrary to Plaintiff's assertion of cherry picking, the ALJ expressly considered the statements by Plaintiff's daughter that Plaintiff needed assistance with overhead reaching in cabinets while cooking; that Plaintiff rested between activities; that Plaintiff went nowhere on a regular basis; and that Plaintiff had "[s]ome difficulty with memory, resulting in tasks not being completed . . . as well as difficulty with concentration." R. 21. To the extent that these statements conflicted with the daughter's other statements regarding Plaintiff's abilities and functions, *i.e.*, that Plaintiff cooked daily, did laundry, ironing, weekly grocery shopping, and managing her own finances, needed no reminders for personal care or taking medication, went outside daily unaccompanied, and handled stress as well as anyone else and asked for help if things got too much, the ALJ properly resolved that conflict. *See id.*; *see also Hatton.*, 131 F. App'x 880 ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson*, 402 U.S. 399). Accordingly, substantial evidence supports the ALJ's statement that she read and considered the report of Plaintiff's daughter, which "reflects that the claimant is capable of performing a wide range of daily tasks." R. 21; *see also Chandler*, 667 F.3d at 359; *Perkins*, 79 F. App'x at 514–15.

### E.    Past Relevant Work

Plaintiff also challenges the ALJ's finding that Plaintiff could perform her past relevant work as a teacher. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 33–36; *Plaintiff's Reply Brief*, ECF No. 24, pp. 9–10. Plaintiff specifically argues that the ALJ did not provide specific

findings or analysis regarding the physical and mental demands of this work as required by SSR 82-62; that Plaintiff's subjective complaints show that she cannot perform the physical and mental requirements of her past relevant work; and that the ALJ improperly rejected the established mild mental impairments that would preclude the performance of her past relevant work as a teacher. *Id.* Plaintiff's arguments are not well taken.

At step four of the sequential evaluation, "[t]he claimant bears the burden of demonstrating an inability to return to [her] past relevant work." *Plummer*, 186 F.3d at 428. "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). An ALJ must consider whether the claimant has the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In making this assessment, the ALJ must do three things:

> (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting *Burnett,* 220 F.3d at 120). SSR 82-62 identifies the evidence that the ALJ should consider in making this determination:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as

46

employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62; *see also Garibay*, 336 F. App'x at 158.

In the present case, the ALJ questioned the vocational expert about Plaintiff's past relevant work, which the vocational expert classified as a high school teacher, a light exertional job. R. 693. The ALJ also asked the vocational expert to assume an individual with the RFC ultimately found by the ALJ and Plaintiff's vocational profile; in response, the vocational expert testified that such an individual could perform that teaching job. R. 695–96, 698. Relying on that testimony, the ALJ determined that Plaintiff could perform her past relevant work as a teacher, explaining as follows:

> **6.     The claimant is capable of performing past relevant work as a teacher. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**
>
> The vocational expert provided testimony regarding the claimant's past relevant work as a teacher, Dictionary of Occupational Titles (DOT) # 091.227-010, with a specific vocational preparation level (SVP) of seven, performed at a light exertional level. As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period. (Exhibits 2E, 6E and testimony).
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. Pursuant to SSR 00-4p, the vocational expert's testimony is found to be consistent with the information contained in the Dictionary of Occupational Titles (DOT). The portion of testimony not discussed in the DOT, such as information regarding absenteeism, breaks and time on task, is based on the vocational expert's knowledge, education, training and experience. (Exhibit 15E).

R. 26. This discussion, as well as the ALJ's detailed consideration of the record evidence, including Plaintiff's statements and hearing testimony and the ALJ's reliance on the testimony of the vocational expert at step four, R. 20–25, R. 693–703 (vocational expert testimony at

supplemental administrative hearing) contradicts Plaintiff's assertion that the ALJ failed to properly consider the evidence or otherwise provide specific findings or analysis regarding the physical and mental demands of work as required by SSR 82-62.

To the extent that Plaintiff challenges the finding that Plaintiff could perform her past relevant work as a teacher, on the ground that Plaintiff's has greater limitations than those found by the ALJ, this Court has already explained that substantial evidence supports the ALJ's determination that Plaintiff had no additional or different physical or mental limitations other than those included in the RFC determination. Accordingly, the Court is not persuaded that the ALJ erred in determining that Plaintiff could perform her past relevant work as a high school teacher.

### F.      Constitutionality of Appointment of Commissioner

Finally, Plaintiff challenges the constitutionality of the appointment of a former Commissioner of Social Security, arguing that the appointment violated the constitutional separation of powers. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 36–38; *Plaintiff's Reply Brief*, ECF No. 24, pp. 11–17. This Court has previously rejected similar challenges, reasoning as follows:

> The Plaintiff alleges that the Social Security proceedings in their entirety were constitutionally defective because of the appointment of Andrew Saul as Commissioner of the Social Security Administration. (ECF 10 at 31). The parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers clause to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause. (ECF 15 at 36). Plaintiff argues that because of this violation, the appointed ALJ and the Appeals Council did not have constitutional authority to render a decision on Plaintiff's case. (ECF 10 at 32).
>
> While Plaintiff argues to the contrary, the Supreme Court has already stated that there is no basis to conclude that an appropriately appointed official does not have the authority to carry out the functions of the office, even if his or her position was designed by Congress to impermissibly impinge on the President's right to removal at will. *Collins v. Yellen*, ⸺ U.S. ⸺, 141 S. Ct. 1761, 1787-88, 1788

n.23, 210 L.Ed.2d 432 (2021) (plurality opinion) ("As we have explained, there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of his office.").

> The Appointment Clause cases do not help the shareholders either. These cases also ask whether an officer can lawfully exercise the statutory power of his office at all in light of the rule that an office must be properly appointed before he can legally act as an officer.... Here, "[a]ll the officers who headed the FHFA during the time in question were properly appointed." There is thus no barrier to them exercising power in the first instance.

*Id*. at 1793 (Thomas, J. concurring) (citations omitted).

Similarly, the Court addressed that the idea that the "taint" of the "mere existence" of the offending removal provision flows down through the executive power exercised by the officer was unavailing. *Id*. at 1788, 1793 ("[W]e have not held that a misunderstanding about authority results in a constitutional defect where the action was otherwise lawful.").

The plurality opinion addresses the most pressing issue: that there must be an adequate nexus between the unconstitutional provision and the case at bar. *See id*. at 1779 ("for purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of the law that is challenged."). So too do the concurring opinions of Justices Thomas and Kagan: "I write separately because I worry that the Court and the parties have glossed over a fundamental problem with removal-restriction cases such as these: The Government does not necessarily act unlawfully even if a removal restriction is unlawful in the abstract." *Id.* at 1789 (Thomas, J. concurring). Similarly, "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue." *Id.* at 1802 (Kagan, J. concurring). *See also Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *4-5 (D.N.J. Jan. 6, 2022).

The Court must now consider, then, whether Plaintiff has sufficiently established a concrete injury inflicted by 42 U.S.C. § 902(a)(3) upon Plaintiff through the ALJ's final decision of finding the Plaintiff not disabled and the Appeals Council's denial of review. Without standing, there is no "case or controversy" to be decided. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). Plaintiff argues that both the ALJ and the Appeals Council have inflicted the harm of unconstitutional proceedings against Plaintiff and the subsequent denial of benefits. (ECF 10 at 32).

First, the Third Circuit has already expressly stated that "[n]o statutory authority, (the source of the district court's review) authorizes [district courts] to review the Appeals Council decision to deny review," because the Appeals Council exercises

49

"'certiorari-type jurisdiction,'" and renders an ALJ's decision final under the Social Security Act. *Kwasnik v. Kijakazi*, No. 21-08573, 2022 WL 2358424, at *10, 2022 U.S. Dist. LEXIS 116234, at * 30 (D.N.J. Jun. 30, 2022); *see also Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Thus, this Court does not have the authority to examine the Appeals Council's decision.

Second, the Plaintiff fails to establish a causal connection between the harm of the ALJ's decision and the impermissible removal provision. As discussed above, and as found by other courts, the mere "taint" of the head of an agency does not establish a sufficient nexus for standing. *See Kwasnik v. Kijakazi*, No. 21-08573, 2022 WL 2358424, at *——, 2022 U.S. Dist. LEXIS 116234, at *33-34 (D.N.J. Jun. 30, 2022) (citing *Andino v. Kijakazi*, No. 21-2852, 2022 WL 1135010, at *6-7 (E.D. Pa. April 18, 2022) ("Justice Alito specified in Collins that Seila Law's holding on standing 'does not mean that actions taken by such an officer are void ab initio and must be undone.' ... [I]t is not difficult to see that Collins requires Andino to demonstrate a nexus between the decision denying her disability benefits and 42 U.S.C. § 902(a)(3)."); *Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case). As a result, the requisite nexus is not met, and the Court denies Plaintiff's appeal on this ground."); *see also Ford v. Kijakazi*, No. 21-1432, 2022 WL 1203731, at *6 (E.D. Pa. Apr. 22, 2022) (denying separation of powers claim because plaintiff failed to show "harm caused by Saul exercising authority he retained by virtue of the unconstitutional removal clause.").

As Justice Kagan noted in Collins, for the Court to redress an injury due to an agency decision made by an agency headed by a single executive subject to an impermissible for-cause removal protection, that agency's decision would need to "capture a President's attention." *Collins*, 141 S. Ct. at 1801-02. Justice Kagan specifically noted that the "mass" of Social Security Administration decisions would likely not create a harm that would allow for redress. Id. ("[O]nly when the President's inability to fire an agency head affected the complained-of decision. Only then is relief needed to restore the plaintiffs to the position they 'would have occupied in the absence' of the removal problem.").

Plaintiff points to a statement by President Biden which purports to indicate that President Biden wanted to fire Commissioner Saul. (ECF 16 at 18). Plaintiff points to the below quote in particular to demonstrate that President Biden wanted to fire the Commissioner from the time of the President's inauguration on January 20, 2021:

   Since taking office, Commissioner Saul has undermined and politicized Social Security disability benefits, terminated the agency's telework policy that was utilized by up to 25 percent of the agency's workforce, not repaired the SSA's relationships with relevant Federal employee unions

50

including in the context of COVID-19 workplace safety planning, reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda.

*Id.*

First, these harms listed in the news article quote are general and do not show the required concrete, personal, and causal harm required to establish standing. To establish standing, "a plaintiff must show that it has suffered 'an injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" *Collins*, 141 S. Ct. at 1779 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)); *see also Kwasnik v. Kijakazi*, No. 21-08537, 2022 WL 2358424, at *11 (D.N.J. Jun. 30, 2022).

Plaintiff does not point to a specific legal application, policy, or decision that the ALJ or Appeals Council rendered that had any effect on this case except for the overall denial of benefits, which as explained above was sufficiently supported by the record. *See Johnson v. Kijakazi*, No. 21-2372, 2022 WL 2342569 at *13, 2022 U.S. Dist. LEXIS 114766 at *36 (E.D. Pa. Jun. 28, 2022) ("Plaintiff has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims. Plaintiff thus fails to show how or why [the unlawful] removal clause possibly harmed her.") (internal citations omitted).

The unconstitutionally of 42 U.S.C. § 902(a)(3)'s removal restriction simply does not void the ALJ's decision in this mine-run case. The adjudication process and determination by the Social Security Administration remains valid.

*John G. v. Comm'r of Soc. Sec.*, No. 1:21-CV-17256-NLH, 2022 WL 3678108, at *10–12

(D.N.J. Aug. 25, 2022). This decision is consistent with decisions rendered in other cases in this

District. *See, e.g., Sheree J. v. Kijakazi*, No. 1:21-CV-05477-NLH, 2022 WL 3211415, at *8–11

(D.N.J. Aug. 9, 2022) (same); *Rebecca L. v. Comm'r of Soc. Sec.*, No. 1:21-CV-13848, 2022 WL

3025908, at *13–14 (D.N.J. July 31, 2022) ("Accordingly, Plaintiff has not alleged any

connection between the unconstitutional removal provision in § 902(a)(3) and the ALJ's decision

denying Plaintiff benefits, and nothing commands us to vacate the decisions below on that

ground. . . . Thus, while the removal clause in § 902(a)(3) violates the separation of powers, it does not independently require the Court to remand or reverse the ALJ's decision absent a showing of compensable harm.") (internal quotation marks and citations omitted); *Daniel M. v. Comm'r of Soc. Sec.*, No. CV 21-10533 (RMB), 2022 WL 2952912, at \*5–7 (D.N.J. July 26, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision.") (internal quotation marks and citations omitted); *Margaret S. v. Kijakazi*, No. CV 21-13556 (SDW), 2022 WL 2753475, at \*8–9 (D.N.J. July 14, 2022) ("Plaintiff has offered no evidence demonstrating that 42 U.S.C. § 902(a)(3)'s removal restriction caused the denial of her benefits claim or affected the determination of her benefits in any way. . . . As such, further consideration from this Court on Plaintiff's 'separation of powers' argument is not necessary. Accordingly, the final decision of the ALJ is not constitutionally defective and remand is not warranted."); *Kwasnik v. Kijakazi*, No. 3:21-CV-08573, 2022 WL 2358424, at \*8–11 (D.N.J. June 30, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision."); *Mor v. Kijakazi*, No. CV 21-1730 (JMV), 2022 WL 73510, at \*3–5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case.)"). Nothing in Plaintiff's briefing in the instant case persuades this Court that the reasoning in these cases was erroneous. The Court therefore adopts that reasoning and concludes that Plaintiff has not established that remand is appropriate on this basis.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  January 19, 2024                     _____*s/Norah McCann King*_____
                                                    NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE